**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Jean O., | No. CV-24-08166-PCT-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant Laura Jean O.'s[1] ("Claimant") appeal from the Commissioner of the Social Security Administration's ("SSA" or the "Commissioner") denial of Social Security benefits. (Doc. 13.) The appeal is fully briefed. (Docs. 13, 17, 18.) For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision will be **affirmed**.

**I.  BACKGROUND**

   **A.  Factual Overview**

Claimant was 48 years old on her alleged disability onset date of December 1, 2018. (Administrative Record ("AR") 16, 39.) She has at least a high school education and her past relevant work is unskilled. (AR 39.) Claimant filed her Social Security Disability Insurance (SSDI) benefits application on October 23, 2020, and filed a Title XVI

---

[1] As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

application for supplemental security income on March 5, 2021.[2] (AR 16.) The SSDI claim was initially denied on February 3, 2021, and denied upon reconsideration on April 26, 2022. (*Id.*) Claimant's Title XVI application was denied at the initial level on April 26, 2022. (*Id.*) An administrative hearing was held telephonically on February 15, 2023, with a supplemental telephonic hearing held on June 5, 2023, due to a failure to capture the audio from the February hearing. (*Id.*) The ALJ issued an unfavorable decision on September 29, 2023. (AR 41.)

### B. The SSA's Five-Step Evaluation Process

To qualify for SSDI benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.*

---

[2] Claimant previously submitted a Title II claim on October 31, 2017, and a Title XVI claim on November 2, 2017. (AR 16.) An order of dismissal of these claims was issued on March 6, 2020, due to Claimant's failure to appear for a hearing on February 26, 2020. (*Id.*) The Court notes that Claimant's Opening Brief, (Doc. 13), lists filing dates of October 26, 2020, and March 19, 2021, respectively, for Claimant's most recent applications.

§ 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past five years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that although Claimant worked after the alleged disability onset date of December 1, 2018, this work activity did not rise to the

level of substantial gainful activity. (AR 19.)

At Step Two, the ALJ determined that Claimant had severe impairments, including multilevel degenerative disc disease, acquired bladder prolapse, irritable bowel syndrome ("IBS"), bilateral carpal tunnel syndrome, depression, and borderline personality disorder. (*Id.*)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404. (AR 20.) With respect to the mental impairment of depression, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had moderate limitations in each of them: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. (AR 21–22.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could occasionally operate foot controls bilaterally. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs and occasionally stoop, crouch, crawl, and kneel. She could frequently handle, finger, and feel bilaterally. She could frequently reach overhead. She could have occasional exposure to dangerous moving machinery and unprotected heights. She requires access to a restroom within 50 yards, but the need to use the restroom can be accommodated by normal breaks. The claimant can perform work involving understanding, remembering, and carrying out simple instructions; she can work with occasional changes in a routine work setting; and she can work with minimal, which is defined as 15 percent of an eight-hour workday, in person interaction with the public. She could have frequent interaction with coworkers.

(AR 23.)

At Step Four, the ALJ found that Claimant was not capable of performing any past relevant work. (AR 39.) At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that claimant can perform considering her age, education,

work experience, and RFC. (AR 39–40.) Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through September 29, 2023. (AR 41.)

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Claimant raises a single issue on appeal, arguing that the ALJ failed to reconcile

two impairments identified by Dr. Jesus Lovett II, PsyD, with the RFC determination: (1) a possible "moderate to marked" impairment in her ability to get along with co-workers, respond appropriately to supervision, and maintain socially appropriate behavior when interacting with the public, and (2) a possible moderate impairment in Claimant's capacity to sustain the motivation and effort to perform activities within a schedule and complete a normal workday at a consistent pace. (Doc. 13 at 1, 9–11 (citing AR 629).) She argues that the ALJ failed to explain the partial rejection of Dr. Lovett's opinion, and thus failed to provide sufficient information to allow the court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." (Doc. 13 at 12 (citations omitted), 13 ("absent further explanation from the ALJ, there is no way to discern the ALJ's rationale in reaching the current RFC").)

Claimant's arguments are unpersuasive. In the ALJ's thorough, more-than-fifteen-page RFC analysis, she analyzed Dr. Lovett's records and opinions in significant detail and evaluated record evidence relevant to those opinions. She ultimately found Dr. Lovett's "opinion partially persuasive." (AR 37). As described in further detail below, the ALJ did not err in analyzing Dr. Lovett's opinions or incorporating the portions she found persuasive into the RFC, and thus the RFC was supported by substantial evidence.

### A. Standard for Evaluating Medical Evidence

Under current SSA regulations, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Instead, an ALJ will evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," and consistency "means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (citation modified). An ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source and explain how [she] considered the supportability and

consistency factors in reaching these findings." *Id.* at 792 (citation modified). "Under the revised regulations, an ALJ need only provide '*an* explanation supported by substantial evidence.'" *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (emphasis added) (quoting *Woods*, 32 F.4th at 792).

### B.     Social Interaction Limitations

With respect to Claimant's interactions with others, the ALJ summarized Dr. Lovett's opinion as follows:

> [T]he claimant has difficulty interacting and relating to others due to maladaptive personality traits, and . . . her personality disorder might cause moderate to marked impairment in her ability to get along with coworkers, respond appropriately to supervision, and maintain socially appropriate behavior when interacting with the public, but she could adhere to basic standards of neatness and ask simple questions.

(AR 37 (citing AR 629).)

The ALJ explained that she did "not find the marked impairment in social interactions . . . persuasive" because it was "not consistent with the claimant's self-report that she has not been fired from a job because of problems getting along with other people, and that she does not have problems getting along with authority figures." (AR 38 (citing AR 357).) Elsewhere in the RFC analysis, she also discussed Dr. Lovett's treatment notes and restated information Claimant reported to Dr. Lovett that contradicted the supportability of his conclusion regarding her social interaction impairment, including that she "denied inappropriate and intense anger, impulsive or dangerous behaviors," and was able to engage in activities that involved being in proximity to and engaging with others, including that she was "able to use public transportation" and "could shop in stores." (AR 28.)

Also in the RFC analysis, the ALJ addressed Claimant's testimony that "she is unable to be around people" and "has had episodes of anger, irritability, and tearfulness with her medical providers and examiners" and agreed that "[t]hese findings support limiting the claimant's interactions with others." (AR 35.) The ALJ explained in detail

that there was countervailing evidence, stating that Claimant "has also maintained good eye contact, was compliant and cooperative during her consultative examination, and reported being able to take public transportation. She also denied inappropriate and intense anger, impulsive or dangerous behaviors during her consultative examination." (*Id.*) Based on these additional facts, which the ALJ found were inconsistent with Dr. Lovett's social-interaction opinion, she determined that a narrower RFC restriction was appropriate: "It appears that, while the claimant has some difficulty interacting appropriately with other people, she is not completely precluded from interactions during a normal workday." (*Id.*)

Likewise, in discussing Claimant's reported limitations performing her daily activities, the ALJ noted that Claimant "denied problems with personal hygiene . . . [and] shopping," "reported being able to use public transportation," and reported being able to "shop in stores despite not liking to do so," and explained that the "social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 36 (citing AR 884).) The ALJ then stated that Claimant's "ability to participate in such activities diminishes the persuasiveness of [her] allegations of functional limitations." (*Id.*)

Finally, the ALJ noted that she found Dr. Lovett's "opinion vague in defining [Claimant's] functional limitations, which limits its persuasiveness. For example, Dr. Lovett found moderate to marked limitations in [Claimant's] ability to respond appropriately to supervision and maintain socially appropriate behavior, but he does not indicate how often the claimant would be impaired in those areas or the level of interaction she could sustain within a workday/workweek." (AR 38.)

Based on her thorough analysis of the supportability and consistency of Dr. Lovett's social-interaction finding, including the evidence in the record, the ALJ included the following restriction in the RFC: "[Claimant] can work with minimal, which is defined as 15 percent of an eight-hour workday, in person interaction with the public. She could have frequent interaction with coworkers." (AR 23.)

This conclusion was supported by substantial evidence. Claimant does not

specifically identify how the ALJ failed to adequately analyze the "supportability" and "consistency" factors of Dr. Lovett's opinions concerning Claimant's social interaction limitations. This is not surprising given the thoroughness of the ALJ's decision on this topic. Moreover, the ALJ correctly discarded Dr. Lovett's non-imperative suggestion that Claimant's "personality disorder *may* cause moderate to marked impairment in her ability to along with [sic] co-workers, respond appropriately to supervision, and maintain socially appropriate behavior when interacting with the public." (AR 629 (emphasis added).) An ALJ need not accept a non-imperative suggestion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (finding that a medical opinion "offered as a *recommendation*, not an imperative" was not required to be accepted by the ALJ); *see also* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about . . . whether you have one or more impairment-related limitations . . . .").

Because the ALJ's RFC restriction concerning Claimant's social interaction limitations was supported by substantial evidence, and because she properly evaluated Dr. Lovett's opinions, she did not err.

### C. Persistence and Maintaining Pace

The ALJ summarized Dr. Lovett's opinion concerning Claimant's persistence and pace as follows: "[Claimant] might have moderate difficulty sustaining motivation, effort, and concentration to perform activities within a schedule and complete a normal workday at a consistent pace." (AR 37 (citing AR 629).) Like the social-interaction opinion, the ALJ did not find this opinion concerning "limitations in the claimant's ability to perform within a schedule persuasive," explaining that Claimant's "reported ability to manage money, perform personal care and hygiene tasks independently, take medications and obtain refills independently, and use public transportation is not consistent with an inability to perform within a schedule or complete tasks in a timely manner." (AR 38 (citing AR 352–59, 884).)

The ALJ reviewed, in some detail, the information Claimant provided Dr. Lovett

that did not support his opinion, including that she was "able to manage her finances"; "able to take her daily medications and obtain refills independently," "cares for her daughter's dog, feeding him in the morning and at night," and was able to use public transportation and do her shopping. (AR 38.) She also identified Dr. Lovett's own findings that contradicted his opinion, including that Claimant had "normal energy levels," showed "logical and goal directed thought processes," and had no "perceptual disturbances." (AR 38.) Moreover, the ALJ discussed other record evidence that was inconsistent with Dr. Lovett's opinion about Claimant's persistence and pace, including that Claimant is "able to pay attention 'all the time'" and "able to finish what she starts." (AR 22 (citing AR 357).)

The ALJ did not err in examining Dr. Lovett's opinion concerning Claimant's persistence and pace. She examined, (1) the supportability of his opinion, including information Claimant provided to Dr. Lovett and Dr. Lovett's own observations, both of which contradicted his opinion; and (2) the consistency (or lack thereof) of Dr. Lovett's opinion with other record evidence that showed Claimant had no difficulties completing tasks. Additionally, the ALJ was not required to include any pace limitation because Dr. Lovett's finding was merely a non-imperative suggestion; Dr. Lovett indicated only that Claimant "*may* have moderate to sustain [sic] motivation and effort and concentration to perform activities within a schedule and complete a normal workday at a consistent pace." (AR 629 (emphasis added).) *See Carmickle*, 533 F.3d at 1165; *see also* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Claimant's quibble with the ALJ's failure to use the word "pace" when discounting Dr. Lovett's opinion is unpersuasive given that she expressly stated that Claimant had the ability to "complete tasks in a timely manner," which unambiguously addressed her pace. (AR 38.) Furthermore, Claimant's citation to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) is misplaced for two reasons. First, *Stubbs-Danielson* involved a pace limitation that the ALJ adopted, whereas here the ALJ rejected Dr. Lovett's pace limitation based on substantial evidence. Second, in *Stubbs-Danielson* the Ninth Circuit affirmed the

- 10 -

1  denial of benefits after concluding that the "ALJ translated [the claimant's] condition,
2  including the pace and mental limitations, into the only concrete restrictions available to
3  him," which was an RFC limitation to "simple tasks." *Id.* at 1174. The same is true here.
4  Given that Dr. Lovett identified no "concrete restrictions" that could be included in the
5  RFC and suggested only that Claimant "may" have pace or persistence limitations, (AR
6  629), the ALJ properly analyzed Dr. Lovett's opinions, found them only partially
7  persuasive, and fashioned the RFC accordingly, consistent with substantial evidence in the
8  record.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 30th day of September, 2025.

_____
Honorable Sharad H. Desai
United States District Judge